**No. 21-40705**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

CEATS, INC.,
*Plaintiff-Appellant*
v.
TICKETNETWORK, INC.; TICKET SOFTWARE, LLC,
*Defendants-Appellees*

**consolidated with**

---

No. 22-40028

---

CEATS, INC.,
*Plaintiff-Appellant*
v.
TICKETNETWORK, INC.; TICKET SOFTWARE, LLC,
*Defendants-Appellees*

---

On Appeal from the United States District Court
For the Eastern District of Texas, Marshall Division
No. 2:15-CV-1470

---

**BRIEF OF DEFENDANTS-APPELLEES IN CASE 22-40028**

---

[*Counsel Listed on Inside Cover*]

CARL E. BRUCE
Texas Bar No. 24036278
bruce@fr.com
DAVID B. CONRAD
Texas Bar No. 24049042
conrad@fr.com
MATTHEW COLVIN
Texas Bar No. 24087331
colvin@fr.com
AARON P. PIROUZNIA
Texas Bar No. 24098958
pirouznia@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070

JOHN W. THORNBURGH
California Bar No. 154627
thornburgh@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, California 92130
(214) 747-5070

*Counsel for Defendants-Appellees*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned certifies that the following listed persons and

entities as described in the fourth sentence of Rule 28.2.1 have an interest

in the outcome of this case. These representations are made in order that

the judges of this Court may evaluate possible disqualification or recusal:

| **Party** | **Counsel** |
|---|---|
| *Plaintiff-Appellant:*<br>CEATS, Inc. | *Counsel for Plaintiff-Appellant:*<br>Michael J. Sullivan<br>Brian J. Leske<br>Ashcroft Law Firm, LLC<br>George L. Hampton<br>Timothy A. Burnett<br>Stephanie A. Pittaluga<br>Hall Griffin, L.L.P. |
| *Defendants-Appellees:*<br>TicketNetwork, Inc.<br>Ticket Software, LLC | *Counsel for Defendants-Appellees:*<br>David B. Conrad<br>Carl E. Bruce<br>Matthew A. Colvin<br>Aaron P. Pirouznia<br>John W. Thornburgh<br>Fish & Richardson, P.C. |
| *Appellants in related appeal, No. 22-40028*<br>Milford Skane<br>Brian Billett<br>Sonja McAuliffe | *Counsel for Appellants in related appeal, No. 22-40028:*<br><br>David W. Affeld<br>Damion D. D. Robinson<br>Affeld Grivakes L.L.P. |

<u>*/s/David B. Conrad*</u>
David B. Conrad

i

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Fifth Circuit Rule 28.2.3, Defendants-Appellees TicketNetwork, Inc. and Ticket Software, LLC ("TicketNetwork") respectfully submit that oral argument will substantially assist the Court in its consideration of this appeal.

The district court in this case conducted multiple hearings before issuing the sanctions at issue, including multiple evidentiary hearings. It also issued detailed fact findings, many of which are ignored by both Plaintiff-Appellant CEATS, Inc. ("CEATS") and individual appellants Milford Skane, Sonja McAuliffe, and Brian Billett (collectively, "Individuals").[1]  For example, CEATS's and Individuals' own statements regarding oral argument directly contradict the district court's findings regarding bad faith and harm, and whether the sanctions imposed are necessary to remedy that harm.  TicketNetwork believes oral argument will help set the record straight.

In addition, this appeal has been consolidated with Appeal No. 21-40705 and thus involves two sets of appellants (CEATS plus its employees

---

[1] TicketNetwork submits this combined response to CEATS's and Individuals' briefs because it understands Individuals plan to seek reinstatement of their appeal following dismissal for failure to prosecute.

and agents in this case and only CEATS in the consolidated case).  Because the appellants do not agree with each other on some points, this complexity also favors oral argument.[2]

---

[2] Case No. 21-40705 has been consolidated for oral argument but not briefing.  Citations to that record are designated with that appeal number.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ................................................. i

STATEMENT REGARDING ORAL ARGUMENT ......................................... ii

TABLE OF CONTENTS ................................................................. iv

STATEMENT OF JURISDICTION ................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................... 2

STATEMENT OF THE CASE ...................................................... 4

SUMMARY OF THE ARGUMENT ............................................... 24

ARGUMENT ........................................................................ 26

I.      STANDARDS OF REVIEW .................................................. 26

II.     THE DISTRICT COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS ........................................................ 27

    A. The District Court's Finding of Reckless Disregard Was Not Clearly Erroneous ........................................................ 28

    B. The District Court's Finding of Harm to TicketNetwork Was Not Clearly Erroneous .................................................... 36

III.    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN FASHIONING REMEDIES FOR CEATS'S AND INDIVIDUALS' MISCONDUCT ........................................................ 37

    A. The District Court Acted Within Its Discretion in Calculating Fees and Costs ........................................................ 38

    B. The District Court Acted Within Its Discretion in Assigning Liability to CEATS and Individuals .......................................... 42

        1.   CEATS Was Properly Held Liable ................................. 43

        2.   Individuals Were Properly Held Liable ............................ 45

C. This Court Should Reject CEATS's and Individuals' Other Defenses .............................................................. 47

    1.   The District Court Correctly Defined Bad Faith to Include Reckless Disregard ............................................. 47

    2.   The District Court Afforded Individuals Due Process ................ 52

    3.   The District Court Did Not Apply Rule 37 to Individuals .......... 55

    4.   The District Court Properly Rejected Individuals' Arguments About "Financial Ruin" ..................................................... 55

    5.   This Court's Decision in the Lead Appeal Will Not Necessarily Determine the Outcome Here .......................................... 57

    6.   Should the Court Find Any Adjustment in Monetary Sanctions Required, It Should Remand............................................ 57

IV.   THE COURT SHOULD DECLINE TO CONSIDER NEW ARGUMENTS ON APPEAL .......................................................... 58

CONCLUSION ............................................................... 60

CERTIFICATE OF SERVICE......................................................... 62

CERTIFICATE OF COMPLIANCE................................................. 63

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*1488, Inc. v. Philsec Inv. Corp.*,
  939 F.2d 1281 (5th Cir. 1991)...................................................... 55

*Benefit Recovery, Inc. v. Donelon*,
  521 F.3d 326 (5th Cir. 2008) ...................................................... 59

*Brantley v. Surles*,
  804 F.2d 321 (5th Cir. 1986) ...................................................... 40

*Browning v. Kramer*,
  931 F.2d 340 (5th Cir. 1991) ...................................................... 52

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ...................................................................... 49

*Chaves v. M/V Medina Star*,
  47 F.3d 153 (5th Cir. 1995) ........................................................ 49

*Coats v. Pierre*,
  890 F.2d 728 (5th Cir. 1989) ................................................ 56, 58

*Combs v. City of Huntington, Tex.*,
  829 F.3d 388 (5th Cir. 2016)...................................................... 42

*Crowe v. Smith*,
  151 F.3d 217 (5th Cir. 1998) ................................................ 49, 58

*Farrar v. Hobby*,
  506 U.S. 103 (1992) .................................................................... 42

*Fink v. Gomez*,
  239 F.3d 989(9th Cir. 2001)........................................................ 51

*Galena Oaks Corporation v. Scofield*,
  218 F. 2d 217 (5th Cir 1954)...................................................... 27

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 765 (2011)..................................................................... 49

*Goldin v. Bartholow*,
   166 F.3d 710 (5th Cir. 1999) ............................................................ 49, 53

*Honey-Love v. United States*,
   664 F. App'x 358 (5th Cir. 2016) ............................................................ 44

*Inmon v. State of Mississippi*,
   278 F. 23 (5th Cir. 1922)........................................................................ 48

*Kaufman v. Am. Fam. Mut. Ins. Co.*,
   601 F.3d 1088 (10th Cir. 2010) ............................................................. 54

*Kenyon Int'l Emergency Servs., Inc. v. Malcolm*,
   No. 12-20306, 2013 WL 2489928 (5th Cir. 2013) .................................. 58

*Mac Sales Inc. v. E.I. duPont de Nemours & Co.*,
   121 F.3d 703, 1997 WL 450059 (5th Cir. 1997)...................................... 44

*Maguire Oil Co. v. City of Houston*,
   143 F.3d 205 (5th Cir. 1998)............................................................. 49, 58

*Marrocco v. General Motors Corp.*,
   966 F.2d 220 (7th Cir. 1992) ................................................................. 48

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
   427 U.S. 639 (1976) .................................................................. 26, 37, 38

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .............................................................................. 49

*Paladin Assocs., Inc. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ............................................................... 44

*Pressey v. Patterson*,
   898 F.2d 1018 (5th Cir. 1990) ......................................................... 26, 37

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
   851 F.3d 1218 (11th Cir. 2017) .............................................................. 50

*Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*,
   960 F.2d 564(5th Cir. 1992) ..................................................................57

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
   685 F.3d 486 (5th Cir. 2012) .......................................................26, 27, 37

*Smith Int'l Inc. v. Texas Commerce Bank,*
    844 F.2d 1193 (5th Cir. 1988) .................................................. 45

*In re TCI Ltd.,*
    769 F.2d 441 (7th Cir.1985) .................................................... 50

*Topalian v. Ehrman,*
    3 F.3d 931 (5th Cir. 1993) ............................................... 46, 56

*United States v. Wallace,*
    964 F.2d 1214 (D.C. Cir. 1992) ............................................. 50

*Wilson v. Johns-Manville Sales Corp.,*
    810 F.2d 1358 (5th Cir. 1987) .............................................. 43

## Statutes

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. §§ 1331 and 1338(a) ....................................................... 1

28 U.S.C. § 1332(a)(1) ...................................................................... 1

28 U.S.C. § 1367(a) .......................................................................... 1

28 U.S.C. § 1927 .............................................................................. 50

28 U.S.C. §§ 2201 and 2202 ........................................................... 1

RICO .................................................................................................. 46

## Other Authorities

Fed. R. Civ. P. 11 ..................................................... 45, 46, 53, 55

Fed. R. Civ. P. 37............................................................... *passim*

## STATEMENT OF JURISDICTION

TicketNetwork agrees the district court initially had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 28 U.S.C. §§ 2201 and 2202.  After voluntarily dismissal of TicketNetwork's complaint, the district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

Pursuant to 28 U.S.C. § 1291, this Court has appellate jurisdiction over the December 15, 2021, Memorandum Opinion and Order, ROA.12943-55, because it finally disposed of all remaining sanctions issues (including the amount of attorneys' fees) as to both parties and non-parties.

CEATS and Individuals timely appealed by filing notices of appeal within 30 days of the district court's order. ROA.3709, 3711-3712.

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

TicketNetwork disagrees with the issues presented by CEATS and Individuals, and identifies the following issues for this appeal:

1.  Applying a clear error standard, should this Court affirm the district court's findings of fact, where the district conducted multiple evidentiary hearings and received the results of a forensic investigation, where the district court wrote a detailed opinion, and where CEATS and Individuals do not identify any clear factual errors in their opening briefs?

2.  Accepting the district court's fact findings as true, should this Court affirm the district court's exercise of discretion in fashioning an appropriate remedy for CEATS's and Individuals' breach of a court order where:

    a.  CEATS and Individuals violated the court's protective order by sharing TicketNetwork's crown-jewel customer list with persons not authorized to see it—including CEATS's CEO— who then used it for competitive advantage in settlement negotiations;

b. CEATS and Individuals (including CEATS's CEO) were aware of the importance and confidentiality of TicketNetwork's customer list;

c. CEATS and Individuals attempted to cover up their protective order violations through false statements under oath to the district court and destruction of evidence;

d. The costs and fees awarded by the district were the direct result of CEATS's and Individuals' protective order violations and the resulting investigation;

e. The district court used its knowledge of the local legal market to evaluate the reasonableness of TicketNetwork's fees, allowing some requests and denying others?

f. Each of the Individuals was an agent, employee, or officer of CEATS?

3. Should this Court find that CEATS and Individuals raised arguments for the first time on this appeal, resulting in waiver?

## STATEMENT OF THE CASE

This appeal concerns serious violations of a court order entered to protect litigants' confidential information. These violations were the acts of CEATS, its CEO Mr. Milford Skane, and two of CEATS's retained experts, Dr. Brian Billett and Ms. McAuliffe. Mr. Skane, Dr. Billett, and Ms. McAuliffe will be referred to herein as Individuals.

The most salient facts are those recited in the district court's opinions regarding CEATS's and Individuals' violations, their cover up, and the appropriate remedies therefor. In Appeal No. 21-40705, TicketNetwork's brief also included a comprehensive statement of facts regarding the parties' underlying dispute and the district court's sanctions orders. For reasons of efficiency, TicketNetwork will not repeat all of that here but will instead focus on just the key facts relevant to CEATS's second appeal (regarding the calculation of monetary sanctions) and to Individuals' appeal.

The present protective order dispute arose during post-trial briefing, when CEATS's CEO attempted to use TicketNetwork's confidential customer list to gain advantage in settlement negotiations, as detailed below.

### *CEATS's Motion to Compel TicketNetwork's Customer List:*

The most contested issue during discovery was whether CEATS was entitled to a list of TicketNetwork's website customers. This resulted in CEATS filing a motion to compel. ROA.412. TicketNetwork opposed, explaining that it "considers the identities of specific websites to be among its most confidential trade secrets." ROA.479.

The district court, Magistrate Judge Roy Payne presiding, held a hearing on CEATS's motion. ROA.5013-5137. CEATS CEO Milford Skane attended along with CEATS's counsel. ROA.5015. At the hearing, CEATS argued "they say this information is highly confidential and a trade secret. That is what protective orders are for…." ROA.5024-5025. The magistrate judge agreed, ruling from the bench "I am going to order production of the website names and addresses, but I want your side to certify in writing to TicketNetwork that those AEO documents won't be viewed by attorneys who are identifying or targeting licensing prospects." ROA.5066. CEATS's counsel readily agreed to this limitation as a condition for production. ROA.5066-5067.

Thereafter, CEATS filed a notice with the district court confirming its agreement with a licensing bar as a condition for production of TicketNetwork's highly confidential customer list. ROA.5208, 4313. The

district court then conducted a further hearing to finalize the exact terms of the licensing bar, on November 2, 2017. ROA.5138. CEATS's CEO Mr. Skane again attended the hearing. ROA.5140. CEATS's counsel explained that the parties had disagreed about the exact language and told the court "[s]o instead of counsel for CEATS and Mr. Affeld not using TicketNetwork's compelled production, your actual language was that those who view it will not use it for licensing purposes, so we submitted an amended notice regarding that website list and even took it a step further and submitted a declaration of Mr. Affeld to the same effect." ROA.5208.[3]

CEATS's counsel also offered repeated reassurances: "We will absolutely comply with the protective order. We submitted this declaration or the certification, and the one attorney that TicketNetwork had pointed out that they had specific concern about, we submitted a declaration to address those concerns." ROA.5209. In addition, Mr. Affeld represented "the concern that TicketNetwork has about what I would do with work product to circumvent the business relationship that TicketNetwork has with its customers is not a real concern. I have no intention of doing that." ROA.5212.

---

[3] At the time, Mr. Affeld was counsel of record for CEATS; he now represents Individuals in this appeal.

Based on these conditions, the court ordered production of TicketNetwork's customer list.  ROA.5210, 715-716.

TicketNetwork then produced the requested customer list (Bates number TN002528) in a password-protected, encrypted ZIP file, stating that "[p]ursuant to the terms of the protective order, this production contains Highly Confidential – Outside Counsel Eyes Only information." ROA.4331.  As added security, the encrypted ZIP file was not attached to the cover email.  Instead, it was uploaded to a secure FTP site, which required another password (sent by separate email) to access and download.  ROA.4331.  In addition, since the document was produced as a native Excel file, the ZIP file also contained an image file cover sheet with both the TN002528 Bates number and a "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" label.  ROA.4333, 6760.

The protective order in this case expressly permits designation of "highly sensitive . . . customer lists" as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY."  ROA.354.  Access to such materials is strictly prohibited to in-house representatives and other persons "who exercise competitive decision-making authority on behalf of a Party." ROA.356-357.  In addition, the protective order imposes duties on persons permitted to receive highly confidential documents. "Any person in

7

possession of Materials that have been designated as . . . 'HIGHLY
CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY' shall exercise
reasonable and appropriate care with regard to the storage, custody, or use
of such Materials to ensure that their confidential nature is maintained."
ROA.359.

The protective order also requires each expert designated to receive
confidential information to execute an "Agreement to Be Bound by
Protective Order." ROA.359.  Among other things, this agreement states "I
understand that any violation of the Stipulated Protective Order may
subject me to sanctions by the Court, civil liability, criminal liability, or any
combination of the above.  I submit myself to the jurisdiction of the United
States District Court for the Eastern District of Texas for the purpose of
enforcing or otherwise providing relief relating to the Protective Order."
ROA.367.  Both Dr. Billett and Ms. McAuliffe were designated as experts by
CEATS and executed the required "Agreement to Be Bound."  ROA.2989-
2990, 4368-69.

*CEATS's and Individuals' Protective Order Violations:*  A
little over a year after production of TicketNetwork's customer list
TN002528, its worst fears came true: CEATS's CEO Milford Skane—who
had attended the hearings on TicketNetwork's customer list and who most

certainly was not entitled to see TicketNetwork's highly confidential documents—sent an email to TicketNetwork's CEO in January 2019 *attaching* TN002528 and *using* it in an attempt to leverage settlement. More specifically, Mr. Skane wrote "We both know the sites involved (attached) and what the numbers are. These can certainly be our starting point. . . . we are willing to consider an 8-figure (not $99m, but not $10m either) global settlement for any and all TicketNetwork owned affiliates." ROA.3220.

In response to this shocking misuse of TicketNetwork's most confidential information—along with an implied threat, since Mr. Skane "knew" TicketNetwork's customers—TicketNetwork filed a motion to show cause in February 2019. ROA.4254-74. At this point, TicketNetwork was able to identify two breaches of the protective order by CEATS: (1) Mr. Skane's possession and use of TN002528, and (2) transmittal of TN002528 to Mr. Skane by Ms. McAuliffe. ROA.4261. As relief, TicketNetwork requested (i) additional discovery, (ii) a forensic investigation, (iii) extension of the existing licensing bar, and (iv) fees and costs resulting from the breach. ROA.4256.

CEATS came out swinging in response to TicketNetwork's motion to show cause. ROA.4573 ("TicketNetwork relies on half-truths and

innuendo").  However, CEATS's positions evolved as additional facts
emerged.

The district conducted an evidentiary hearing on TicketNetwork's
motion on April 30, 2019.  ROA.6413-98.  Both Mr. Skane and
Ms. McAuliffe testified at this hearing.  *See* ROA.6414.  Afterwards, the
court ordered the requested discovery and forensic investigation, and
carried TicketNetwork's other requests for relief.  ROA.2730-32.

That discovery and forensic investigation, along with CEATS's own
responses to the show cause motion, revealed additional serious protective
order violations.  First, CEATS admitted that Mr. Skane did not just attach
TN002528 to his settlement email, but he also sent it to two other senior
members of CEATS management, Jeff Moorad and Peter Cook.  ROA.4461,
4513-14, 4519-4520.  While CEATS does not now challenge the district
court's finding that Messrs. Moorad and Cook "were responsible for license
negotiations on behalf of CEATS" (*see* Appeal No. 21-40705, CEATS's reply
brief at 25 n.8), CEATS vigorously denied this fact before this district court,
resulting in the necessity of TicketNetwork having to prove it.  *Compare*
ROA.4533 ("neither [Messrs. Moorad and Cook] are involved in licensing";
ROA.4632-33 ("TN 002528 was not viewed by those involved in CEATS'
licensing efforts").

It was also revealed that the consulting expert who sent TN002528 to Mr. Skane, Ms. McAuliffe, should never even have been allowed to see it herself.  When CEATS disclosed Ms. McAuliffe to TicketNetwork for protective order clearance, it failed to reveal she had a history of working for CEATS, whose business is licensing and litigation.  ROA.4364, 4366.  In fact, she had previously worked for CEATS and Mr. Skane on its licensing and litigation efforts.  ROA.4394-4403.  In ordering production of TicketNetwork's customer list, Judge Payne had stated that he wanted CEATS "to certify in writing to TicketNetwork that those AEO documents won't be viewed by attorneys who are identifying or targeting licensing . . . prospects."  ROA.5066:14-22.  CEATS did not provide this certification for Ms. McAuliffe, yet this is exactly the type of work Ms. McAuliffe performed.  She testified her "job was to video infringers and do all the research for another legal matter."  ROA.6472:19-21.  She also stated that although "Mr. Skane never asked me directly[, it] was always assumed that I look for infringers, videoed them, and analyzed the technology behind what they're doing."  ROA.6473:2-5.  CEATS's attorneys knew this and never should have permitted Ms. McAuliffe to see TicketNetwork's customer list.

Nonetheless, Ms. McAuliffe was given a copy of TN002528 less than a week after it was produced. ROA.4335.

Ms. McAuliffe also failed to protect the secrecy of TN002528. She admitted she was aware it was highly confidential when she received it. ROA.6476:1-10 ("It was highly confidential in the email body that I received with the attachment."). She also immediately renamed the file so she could remember what it was, but failed to include any indication it was confidential. ROA.6479-81. Ms. McAuliffe then forwarded TN002528 to Mr. Skane after he called her and asked her for a list of TicketNetwork affiliates. ROA.6482-83 ("He said: Do you have a list of TicketNetwork affiliates?"). She was aware Mr. Skane was negotiating with TicketNetwork at that time, and assumed he wanted the customer list for that purpose. ROA.6482-83. At the time he called Ms. McAuliffe, Mr. Skane was likewise aware she had access to confidential information from TicketNetwork because she was under the protective order. ROA.6443. Ms. McAuliffe also could not rule out supplying this information to others at CEATS. ROA.3000-01.

Beyond the protective order violations that were the original basis for TicketNetwork's motion to show cause, the resulting investigation revealed that another CEATS expert, Dr. Billett, also violated it. His name first came

up because he was the person who sent TN002528 to Ms. McAuliffe. ROA.6476-77. Moreover, although Dr. Billett removed TN002528 from the encrypted ZIP protecting it before sending it to Ms. McAuliffe, Dr. Billett was aware TN002528 was highly confidential and told Ms. McAuliffe that. ROA.6477. That is, he accessed the password-protected FTP site and extracted TN002528 from the password-protected ZIP file—removing two layers of security measures—and attached it to the original TicketNetwork transmittal email that stated the document was designated Highly Confidential – Outside Counsel Eyes Only. *See* ROA.6477, 4640, 6756-60; *compare* ROA.4331, 4333.

Nonetheless, Dr. Billett *also* emailed TN002528 *directly to Mr. Skane*, shortly before Mr. Skane used TN002528 in settlement negotiations. ROA.4726. This finding directly contradicted Dr. Billett's previous sworn statement to the court that "[o]ther than counsel, I never sent TN 002528 to anyone *other than Ms. McAuliffe.*" ROA.4641 (emphasis added). To the contrary, he also emailed it to Mr. Skane.

The forensic investigation also revealed that Dr. Billett improperly disclosed TicketNetwork's confidential information to Mr. Skane on another occasion. Specifically, on January 1, 2018, Dr. Billett copied Mr. Skane a on an email discussing TicketNetwork's highly confidential

computer source code, attaching excerpts from the highly confidential deposition transcripts of TicketNetwork's Chief Technical Officer and technical expert, and also attaching two annotated highly confidential source code files.  ROA.4739, 6719:19-6722:14.

Dr. Billett also improperly shared TicketNetwork's confidential information with associates not disclosed under the protective order.  While he claimed these disclosures were to "support, administrative and clerical staff" and thus permitted, the recipients were technical, not administrative. ROA.6722:15-6726:21; *see also* ROA.4706-4709.

When confronted with his improper behavior, Dr. Billett was unapologetic and attempted to blame TicketNetwork for his violations. ROA.4719.  He also could not rule out sharing TicketNetwork's confidential information with others at CEATS.  ROA.4719.

Finally, the forensic investigation revealed another protective order violation by Mr. Skane.  He shared a confidential damages report, which he was entitled to see, with a CEATS investor, who was *not* entitled to see it. ROA.4704.

***CEATS's and Individuals' Cover Up:***  From the beginning, CEATS and Individuals sought to minimize and hide their protective order violations.  For example, when the violation was first discovered, CEATS

represented to TicketNetwork that no one besides Mr. Skane received TN002528 and that Mr. Skane did not actually read it.  ROA.4361.  After TicketNetwork filed its motion to show cause, CEATS backtracked and admitted that Mr. Skane also sent TN002528 to Mr. Moorad and Mr. Cook in further violation of the protective order.  ROA.4461.  Even so, CEATS told the court that Mr. Skane "did not read" TN002528 and that "neither [Messrs. Moorad and Cook] are involved in licensing."  ROA.4437, 4533.

As discussed above, CEATS's latter assertion did not withstand scrutiny, and neither CEATS nor Individuals now challenge the district court's finding that Messrs. Moorad and Cook "were responsible for license negotiations on behalf of CEATS."  *See* ROA.3221.

As for CEATS's claim that Mr. Skane did not read TN002528, the district court itself closely and incredulously questioned Mr. Skane about this, and received repeated denials.  ROA.6470:14-18 ("Q. Mr. Skane, let me ask one more time. When you sent your email to Mr. Vaccaro, you sent the entire attachment as you got it from Ms. McAuliffe, having never opened it, never looked at it; is that correct?  A. Yes, it's correct."); *see also* ROA.6371:2-24.

However, contrary to this testimony, the forensic investigation revealed that Mr. Skane *did* open TN002528, more than once.  *E.g.*,

ROA.4731 ("[W]e were able to locate two copies of the TN002528 file in a temporary folder on Skane's desktop . . . the file creation date means the file was first opened on this device--Skane's desktop.").  In other words, Mr. Skane lied under oath in response to direct questioning from the court. Both the Court and TicketNetwork were skeptical that Mr. Skane would send a multi-million dollar settlement demand based on an unopened file attachment, and the forensic investigation revealed that skepticism to be justified.

Mr. Skane also attempted to cover up his misconduct by deleting not just TN002528, but also an entire *month's* worth of email.  ROA.4731-32 ("we did not find any email to/from Sonja McAuliffe or Brian Billett in Skane's email for the month of January 2019.  In fact, there was very little email in Skane's account for the January-February 2019 timeframe—only 7 total messages between January 4, 2019 and February 12, 2019.  By way of comparison, in the months surrounding that timeframe, there appears to be normal email activity.  This typically indicates deletion activity."); ROA.4461 ("I deleted approximately a month of emails").

Dr. Billett's attempted cover up was no less egregious.  The forensic investigation "found very little information relating to TN002528" on Dr. Billett's laptop because "CleanManager and CCleaner were used the

16

morning before [the investigators] collected Billett's laptop on July 11, 2019. These are utilities used to clean potentially unwanted files and registry entries from a computer." ROA.4732. As a result, "Billett's laptop investigation revealed very little." ROA.4733. This destruction of evidence led to missing emails between Dr. Billett and Mr. Skane. Indeed, Dr. Billett's email sending TN002528 to Mr. Skane was only uncovered by investigating Ms. McAuliffe's emails. ROA.4745. This email was not found on either Mr. Skane or Dr. Billett's devices because both deleted the evidence.

Beyond lying and destroying evidence, CEATS also resisted the forensic investigation at every turn. For example, it delayed providing useable privilege logs and took unreasonable positions regarding search terms. *See* ROA.4711-14.

CEATS also attempted to deflect blame onto TicketNetwork for not including a confidentiality designation in the *filename* of TN002528, even though TicketNetwork put TN002528 in an encrypted ZIP file on a password-protected FTP site, included a cover sheet with a "highly confidential" designation, and also designated TN002528 as "highly confidential" in the cover email. ROA.4331, 4333, 6760. CEATS initially argued to the district that "TicketNetwork failed to properly designate"

TN002528 even though the protective order does not require files to be named in a particular way.  ROA.4571; *compare* ROA.353-54 at ¶ 3. However, under questioning from the district court, CEATS counsel later admitted that TN002528's filename was "not an excuse."  ROA.6422-23.

***The District Court's Investigation and Fact Findings:***  The district court's investigation into CEATS's protective order violations was thorough and exhaustive.  After TicketNetwork filed its initial motion to show cause, CEATS filed an opposition and then both parties replied.  *See* ROA.4254-74, 4434-52, 4530-37, 4570-76.  The district court then conducted a first evidentiary hearing, as discussed above, with both Mr. Skane and Ms. McAuliffe testifying.  ROA.6413-98.  The district court was an active participant in the questioning.  *E.g.*, ROA.6371:2-24, 6470:14-18.

At the end of that hearing, the district court permitted additional letter briefs summarizing the evidence.  *See* ROA.4577-631, 4631-38.  The court then ordered the additional discovery and a forensic investigation, while carrying TicketNetwork's other requests for relief.  ROA.2730-32.

Nearly a year later, after the discovery and forensic investigation were complete, the court permitted another round of briefing on the results.  *See* ROA.4695-724, 4779-802, 4765-74, 4803-12.  The court also received the

report of the forensic investigators.  ROA.4730-34.  The district court then convened a second, all-day evidentiary hearing, during which it heard testimony from forensic investigator Neil Broom, Milford Skane (again), Brian Billett, Sonja McAuliffe (again), forensic investigator Gene Zinovchuk, TicketNetwork CFO Christopher Hummer, and CEATS corporate representative Phillip Trad.  *See* ROA.6808-860.  Mr. Affeld, counsel for Individuals in this appeal, represented Individuals at this hearing.  ROA.6611:12-16.  He was also on the signature block for CEATS's briefs.  ROA.4801, 4811.

Afterwards, the district court issued detailed findings of fact. ROA.3213-37.  TicketNetwork quoted extensively from these findings in its brief in Appeal No. 21-40705, so it will only mention highlights here.  Most notably for present purposes, the district court found:

- CEATS (through its CEO Mr. Skane) and Individuals "recklessly disregarded" the district court's protective order.  ROA.3215, 3225, 3228, 3232-33.

- Such reckless disregard is a species of "bad faith."  ROA.3216, citing 6 Moore's Federal Practice, § 26.108 (3d ed.).

- CEATS and Individuals also interfered with the district court's investigation by submitting false testimony and destroying

evidence.  ROA.3220-21, 3223, 3225, 3228-32; *see also* ROA.12951-52 ("The record is replete with examples of testimony from some of the Involved Individuals that contradict the findings of a digital forensic investigation and efforts to conceal or obfuscate their violations of the Court's protective order."); ROA.12952 ("CEATS and the Involved Individuals recklessly disregarded those procedures and attempted to obfuscate their misdeeds once caught.").

- As a result, the investigation "took considerable time and effort."  ROA.3215.  CEATS's and Individuals' misconduct "resulted in actual costs to TicketNetwork in order to investigate and enforce the promises and safeguards ordered by the Court and previously agreed to by CEATS and the Involved Individuals."  ROA.12952.

- "Indeed, the actions by the Involved Individuals gave rise to the very costs they now complain would lead to their financial ruin. These costs were only amplified by their concealment and obfuscation efforts."  ROA.12952.

- The district court also drew adverse inferences against CEATS and Individuals based on their false testimony and spoliation of

evidence.  ROA.3225 ("The Court also views Mr. Skane's overbroad deletion of his emails and insistence that he did not view TN002528 (despite forensic evidence otherwise) as probative of Mr. Skane's awareness of this risk."); ROA.3231-32 ("Even if his intentions were innocent (which is doubtful), the Court finds it impossible to believe that Dr. Billett did not know how his actions—running deletion software the day before a forensic investigation into his own conduct—would be perceived.").

As discussed in the argument, CEATS and Individuals acknowledge the clear error standard for challenging these fact findings, but fail to apply it.

***The District Court's Remedies:***  The district court took great care in fashioning its remedies.  For example, it ordered further briefing regarding monetary sanctions after initially finding that CEATS and Individuals had violated the protective order.  ROA.3236.  It permitted both CEATS and Individuals to files briefs.  ROA.3236.  And while the court limited those briefs to seven pages each, neither CEATS nor Individuals requested additional pages.

The district court also addressed CEATS's repeated argument that "[a] party's violation of a discovery order ordinarily must be committed willfully or in bad faith for the court to award the severest of remedies available under Rule 37(b)" and that "[i]n the Fifth Circuit, punishment for violation of a protective order must be the least onerous sanction which will address the offensive conduct." *E.g.*, ROA.4791, 4782.  While CEATS never specified what remedy it thought might fit this description (*see* ROA.4783), the district court devoted considerable time and space to address why its remedy was appropriate.

First, as detailed above, the district court expressly rejected CEATS's assertion that "CEATS did not act willfully, knowingly, or recklessly in violating this Court's Protective Order." *See* ROA.4798.  To the contrary, the district court repeatedly found that CEATS and Individuals acted with "reckless disregard" for the Court's protective order and TicketNetwork's confidential information. *E.g.*, ROA.3215.  The district court also found "CEATS, Mr. Skane, Ms. McAuliffe, and Dr. Billett violated the protective order, ***both affirmatively*** and by recklessly disregarding its mandates." ROA.3235 (emphasis added).

The district court also accepted TicketNetwork's proffered authority that "'[b]ad faith' is characterized by conduct that is either intentional or ***in***

***reckless disregard*** of a party's obligation to comply with the protective order." ROA.3216 (emphasis added), citing 6 Moore's Federal Practice, § 26.108 (3d ed.); *see also* ROA.4715 (TicketNetwork arguing the same). Neither CEATS nor Individuals challenged this definition in the district court.

In addition to explaining why extension of the licensing bar was justified (*see* Appeal No. 21-40705), the district court also explained why its award of costs and fees (after making deductions from TicketNetwork's request) was the least severe effective remedy:

> The Court has already found that sanctions are warranted against CEATS and the Involved Individuals, so it need not recount the entire record.  However, the Court notes that the Involved Individuals are far from a pro se litigant filing a frivolous lawsuit. The Involved Individuals are seasoned consultants and sophisticated business professionals with litigation experience.  Nevertheless, the Involved Individuals displayed, at a minimum, a pattern of reckless disregard for the Court's protective order. ***The record is replete with examples of testimony from some of the Involved Individuals that contradict the findings of a digital forensic investigation and efforts to conceal or obfuscate their violations of the Court's protective order.***  (*E.g.*, Dkt. No. 448 at 7–14 (findings of forensic investigator contradict Skane's testimony that he never opened TN002528); *id.* at 15–16 (finding McAuliffe violated the protective order and deleted all of TicketNetwork's confidential information from her personal and work devices); *id.* at 16–21 (finding Billet violated the protective order and used data destruction software the day before forensic investigators examined his devices)).  ***Indeed, the actions by the Involved Individuals gave rise to the very costs they now complain would lead to their financial ruin.  These costs were only amplified by their concealment and obfuscation efforts.***  To

entertain the Involved Individuals' "financial means" argument would signal that the Court expects different levels of compliance with its orders based on an individual's financial means. ***Despite the numerous safeguards and certifications the Court employed to protect TicketNetwork's sensitive document, CEATS and the Involved Individuals recklessly disregarded those procedures and attempted to obfuscate their misdeeds once caught. This resulted in actual costs to TicketNetwork*** in order to investigate and enforce the promises and safeguards ordered by the Court and previously agreed to by CEATS and the Involved Individuals. It is appropriate that CEATS and the Involved Individuals shoulder the costs for their reckless disregard for the Court's orders.

ROA.12951-52 (emphasis added).

## SUMMARY OF THE ARGUMENT

The district court's award of sanctions for CEATS's and Individuals' protective order violations in this case are well supported by thorough and well-reasoned opinions, written after two evidentiary hearings and a forensic investigation. As the district court found, CEATS and Individuals misused TicketNetwork's highly confidential customer list after offering repeated assurances that they would closely guard this list and after agreeing anyone exposed to the list would not be involved in licensing. After their protective order violations came to light, CEATS and Individuals then lied under oath and destroyed relevant evidence. This resulted in substantial expense, and even so, additional protective order violations were found. Based on this record, this Court should reject CEATS's and

Individuals' challenges and affirm the district court's sanctions order, for the following key reasons:

CEATS and Individuals fail either to accept or properly challenge the district court's findings of fact. Both admit the clear error standard applies, but fail to apply it. CEATS even admits it "relies on the district court's factual findings," but ignores and contradicts them.

CEATS and Individuals spend much of their briefs arguing the district court failed to find "bad faith," yet the district court found they recklessly disregarded its protective order, which conduct it expressly defined as "bad faith." CEATS and Individuals did not challenge that definition below, and fail to show it is wrong now.

In addition, the district court properly held CEATS and Individuals financially responsible for the costs of its protective order violations, including the resulting investigation. The district court applied the correct law and did not make any clear errors of fact in calculating fees and costs. The court also carefully considered whether its sanctions were the least severe effective remedy, and it made express findings on that, quoted above, which CEATS and Individuals ignore.

Further, while CEATS and Individuals did not preserve their challenges to joint and several liability, everyone involved worked for CEATS, and the district court's remedy was legally permissible.

Finally, CEATS's and Individuals' new arguments on appeal should be disregarded.

This Court should affirm the district court's sanctions orders.

## ARGUMENT

## I.    STANDARDS OF REVIEW

This Court reviews the district court's imposition of sanctions, pursuant to both Rule 37 and its inherent authority, for abuse of discretion. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (Rule 37); *Pressey v. Patterson*, 898 F.2d 1018, 1020-21 (5th Cir. 1990) (inherent authority); *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (affirming district court's selection of sanctions and vacating Third Circuit's vacatur of the same: "The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.")

In addition, "[t]he district court's underlying findings of fact are reviewed for clear error and its underlying conclusions of law reviewed de

novo." *Smith & Fuller*, 685 F.3d at 488.  The burden of challenging the district court's fact finding is "especially strong when the trial court has had the opportunity, not possessed by the appellate court, to see and hear the witnesses, to observe their demeanor on the stand, and thereby the better to judge of their credibility." *Galena Oaks Corporation v. Scofield*, 218 F. 2d 217, 219 (5th Cir 1954).  As detailed above, the district court in this case had the opportunity to question and observe CEATS's witnesses and Individuals, and he found them *not* credible.  *E.g.*, ROA.3225, 3231-32, 12951-52.

## II.    THE DISTRICT COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS

As detailed in the statement of the case, the district court made many important findings of fact after conducting two evidentiary hearings and reviewing the results of a forensic investigation that it ordered.  It explained its reasoning as to how CEATS's and Individuals' conduct amounted to "reckless disregard" and "bad faith" (ROA.3215-16, 3225, 3228, 3232-33); how CEATS and Individuals made false statements to the court and destroyed evidence (ROA.3220-21, 3223, 3225, 3228-32, 12951-52); how CEATS's and Individuals' protective order violations harmed TicketNetwork (ROA.3233-34, 12951-52); how CEATS's cover up imposed unnecessary expense on TicketNetwork (ROA.3215, 3235, 12951-52); how it

calculated reasonable fees and costs (ROA.12946-51); how the court's remedies were tailored to the misconduct, including whether the chosen sanctions were the least severe effective remedy (ROA.3233-35, 12951-52); and how it afforded Individuals due process (ROA.12952-55).

CEATS and Individuals acknowledge the clear error standard of review for fact findings, but do not apply it correctly.

### A. The District Court's Finding of Reckless Disregard Was Not Clearly Erroneous

CEATS neither properly challenges nor accepts the district court's fact findings, despite having admitted it "relies on the district court's factual findings." Appeal No. 21-40705, CEATS's opening brief at 3 n.2. For example, CEATS repeatedly refers to its misconduct as "inadvertent" (e.g., at 1, 9, 15-16, 19, 24), and never accepts the district court's finding that that its conduct constituted "(at least) a pattern of reckless disregard for the Court's protective order." ROA.3215. CEATS even goes so far as to assert "Mr. Skane's unknowing, inadvertent transmissions . . . were not as a result of *his* purported recklessness but rather the individuals who forwarded highly confidential material to him in the first place" and "it is difficult to reconcile the district court's conclusion that Mr. Skane acted in 'reckless disregard for the Court's orders.'" CEATS's brief at 24. However, CEATS

does not demonstrate the district court's finding of reckless disregard was clear error.[4]

To the contrary, the district court did not make a clear error in finding "Mr. Skane recklessly disregarded the protective order and its mandates." ROA.3225. Mr. Skane attended both hearings on CEATS's motion to compel TicketNetwork's customer list. ROA.5015, 5140. He was thus fully aware of the list's confidentiality and also of the licensing bar that CEATS accepted as a condition for production. Mr. Skane also knew Ms. McAuliffe had access to TicketNetwork's confidential information at the time he asked her for a list of TicketNetwork's affiliate web sites. ROA.6443. And, contrary to Mr. Skane's repeated denials under oath, he did open TN002528—so he knew what he had. ROA.6371:2-24, 6470:14-18, ROA.3220-21; *see also* ROA.3225 ("The Court also views Mr. Skane's overbroad deletion of his emails and insistence that he did not view TN002528 (despite forensic evidence otherwise) as probative of Mr. Skane's awareness of this risk."). Under these circumstances, the

---

[4] CEATS also improperly repeats its arguments from the first appeal about no bad faith and no harm. Its attempt to inject another brief on the same issues should be disregarded, and its second appeal limited to quantification of monetary sanctions. Regardless, CEATS's new brief is no better than in the first appeal.

district court's conclusion that Mr. Skane was "at least" reckless is not clearly erroneous. *See* ROA.3215.

Individuals also challenge the finding of recklessness, boldly asserting "[a]lmost as if the district court had a conclusion in search of a justification, the court appended the adjective 'reckless' to what was clearly inadvertence." Individuals' brief at 6. Individuals are wrong, because the district court explained why substantial evidence supported its findings that Individuals exhibited reckless disregard for its order. Mr. Skane is addressed above.[5] As for Dr. Billett, he removed two layers of security from TN002528 (including its "highly confidential" cover sheet) before sending it to Ms. McAuliffe and Mr. Skane, even though he was aware TN002528

---

[5] Individuals also nitpick the district court's statement that Mr. Skane was not entitled to see another document, the McSorley damages report. However, Individuals admit that Mr. Skane shared this confidential damages report with a CEATS investor, who was not entitled to see it, as TicketNetwork had argued. Individuals brief at 35; *see also* ROA.4704. The district court's primary finding in this regard is thus correct. ROA.3215 ("These violations include, at a minimum, transmitting TN002528 to Jeffrey Moorad and Peter Cook and transmitting the McSorley damages report to Terry McEwen."). In addition, Individuals cite cross-examination of the forensic examiner about whether Mr. Skane opened TN002528 (at 35), but that just shows the facts of this case are complex and contested. It does not show the district court committed clear error in finding Mr. Skane opened TN002528. *See, e.g., E.g.,* ROA.4731 ("[W]e were able to locate two copies of the TN002528 file in a temporary folder on Skane's desktop . . . the file creation date means the file was first opened on this device--Skane's desktop.").

was highly confidential.  ROA.6477:15-25, 4331, 4333, 4640, 6756-60, 6610:1-10.  He also attempted to cover up his behavior—making misstatements to the court under oath and destroying evidence. ROA.3229-31.  This caused the district court to draw adverse inferences about his state of mind.  ROA.3231-32.

As for Ms. McAuliffe, she admitted she was aware TN002528 was highly confidential when she received it.  ROA.6476:1-10.  She also immediately renamed it so she could remember what it was, but failed to include any indication it was confidential.  ROA.6479-81.  She then forwarded TN002528 to Mr. Skane after he called her and asked her for a list of TicketNetwork affiliates for settlement purposes.  ROA.6482-83. Ms. McAuliffe also could not rule out supplying this information to others at CEATS.  ROA.3000-01.  In addition, she failed to disclose her long business relationship with CEATS when she obtained clearance under the protective order in the first place.  ROA.4364, 4488, 4394-403, 6472:19-21, 6473:2-5.

Individuals thus fail to demonstrate the district court's finding are clearly erroneous in light of this record evidence.  In addition, their brief is filled with misstatements of the record.  For example, they assert (at 17) that the district court "cited no record evidence" for its finding that

Individuals ignored a "known risk" that the request for an affiliate list could involve confidential material. To the contrary, the district court cited and relied upon evidence that Mr. Skane knew TicketNetwork's customer list was "a big thing [he] wasn't supposed to see," and that both Ms. McAuliffe and Dr. Billett were aware TN002528 was highly confidential. ROA.3203, 3207-08, 3210. Again, the district court also drew adverse inferences as to their mental state due to their false testimony and destruction of evidence. ROA.3255, 3231-32.

Individuals also assert (at 10) TN002528 was not marked highly confidential when Ms. McAuliffe downloaded it, but she admitted "[i]t was highly confidential in the email body that I received with the attachment." ROA.6476:1-10. Individuals say (at 14) that the only improper transmissions of TN002528 were to Mr. Skane and to Messrs. Moorad and Cook of CEATS, but neither Ms. McAuliffe nor Dr. Billett could rule out sharing TN002528 with additional CEATS personnel. ROA.3000-01, 4719. Next, Individuals claim (at 16) that TicketNetwork "tacitly confirmed that the disclosure to Skane was 'inadvertent'"—but what TicketNetwork counsel actually told the court was that TicketNetwork could be harmed by further "inadvertent" use of TicketNetwork's trade secrets since they been disseminated within CEATS. *See* ROA.6919.

Individuals also resurrect CEATS's argument that TicketNetwork should be blamed for how it named TN002528. However, as detailed above, TicketNetwork took extraordinary care to protect TN002528—employing encryption, multiple passwords, and "highly confidential" designations both in the production email and on a cover sheet. ROA.4331, 4333, 6760. The way TicketNetwork designated TN002528 was fully compliant with the protective order, ROA.353-54 at ¶ 3, and under questioning from the district court, CEATS counsel admitted TN002528's filename was "not an excuse." ROA.6422-23.

Individuals' other allegations of clear error fare no better. They say (at 8-9) the district court found TicketNetwork's TN002528 file "originally did bear the 'HIGHLY CONFIDENTIAL' designation in the file name, and that McAuliffe removed it." Individuals' brief at 8-9, citing ROA.3219; *see also id.* 33. But the district court made no such finding. What the district court found is that "[t]he version of TN002528 that Ms. McAuliffe sent to Mr. Skane had the confidentiality designation removed." ROA.3219. In other words, the district court made no finding about a *file name*. In addition, what the district court actually found is consistent with the record evidence that Dr. Billett removed TN002528 from the encrypted ZIP file protecting it before sending it to Ms. McAuliffe. That is, he accessed the

password-protected FTP site and extracted TN002528 from its password-protected ZIP file—removing two layers of security measures and also eliminating the image file with the "HIGHLY CONFIDENTIAL" designation that had been contained in the ZIP file. *See* ROA.6477:15-25 (Ms. McAuliffe testifying she received a bare spreadsheet attached to an email); *compare* ROA.4331 (how TicketNetwork produced and designated TN002528 as highly confidential), 4333 (the image file with a "HIGHLY CONFIDENTIAL' designation), 6460 (Dr. Billett testifying about what he did after receiving TN002528), 6756-60 (same). In addition, Dr. Billett removed all this security even though he was aware TN002528 was highly confidential and told Ms. McAuliffe so. ROA.6477:1-10. These facts are all consistent with the district court's findings. *See* ROA.3219, 3229.

Individuals also assert clear error with respect to the district court finding "a 'pattern' of Billett misusing confidential information." Individuals' brief at 33-34. However, their arguments do not demonstrate error, much less clear error. For example, Dr. Billett copied Mr. Skane on an email attaching and discussing TicketNetwork's highly confidential computer source code. ROA.4739, 6719:19-6722:14. Individuals make excuses for this violation, but admit it happened. Individuals' brief at 15-16. Dr. Billett also improperly shared TicketNetwork's confidential

information with associates not disclosed under the protective order. While he claimed these disclosures were to "support, administrative and clerical staff" and thus permitted, the recipients were technical, not administrative. ROA.6722:15-6726:21; *see also* ROA.4706-09. Individuals also rely heavily on Dr. Billett's denials, but ignore the district court's findings (after observing him testify twice) that he was not a credible witness. ROA.3231. Regardless, as Individuals admit (at 34), the district court stated it could not "conclude definitively that these transmissions were *per se* violations of the protective order" (ROA.3232), and thus they are not the basis of the sanctions at issue.

Finally, and perhaps most importantly, CEATS and Individuals say nothing about the district court's findings they provided false testimony to the district court and destroyed relevant evidence—and also nothing about the adverse inferences the court drew as a result. Instead, CEATS and Individuals pretend these findings do not exist, but that cannot be the basis of a proper appeal. This Court must begin its analysis by accepting the district court's unchallenged fact findings. And that leads to a conclusion that the district court properly exercised its discretion in sanctioning CEATS and Individuals for their egregious misconduct.

## B.    The District Court's Finding of Harm to TicketNetwork Was Not Clearly Erroneous

CEATS also alleges clear error (at 24-25) with respect to the district court's finding that TicketNetwork was harmed.[6]  However, CEATS relies only on truncated quotation from the district judge at a hearing.  What the judge actually said was:

> Let me ask you this, Mr. Hill.  The testimony seems to be that as of this moment in time, there have not been concrete damages or harms visited upon your client but for the expense and time and cost of pursuing this.  However, I don't know how anybody can say that there is no risk that that will occur in the future.

> Tell me what you believe an appropriate remedy would be that would provide maximum protection to your client without overtly or excessively imposing harm or damage on the respondents.

ROA.6850:25-6851:9.  The court's question—which evinces a proper focus on the least sever effective remedy—does not demonstrate that the district court's later findings of harm were clearly erroneous, namely that CEATS's and Individuals' misconduct "could cause irreparable, unquantifiable harm" (as TicketNetwork's witness testified) and certainly "resulted in actual costs to TicketNetwork in order to investigate and enforce the

---

[6] Individuals also argue no harm, but fail to allege clear error in this regard.

promises and safeguards ordered by the Court and previously agreed to by CEATS and the Involved Individuals." ROA.3234, 12952.

CEATS and Individuals also challenge the district court's calculation of fees as clearly erroneous. However, the district judge has substantial experience in evaluating reasonable fees in his community, and this Court should defer to his findings, as detailed in section III.A below.

## III. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN FASHIONING REMEDIES FOR CEATS'S AND INDIVIDUALS' MISCONDUCT

The parties agree this Court reviews the district court's imposition of sanctions, pursuant to both Rule 37 and its inherent authority, for abuse of discretion. *Smith & Fuller,* 685 F.3d at 488 (Rule 37); *Pressey,* 898 F.2d at 1020-21 (inherent authority). As the Supreme Court also explained in *Nat'l Hockey League*, abuse of discretion review is appropriate because "[t]here is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of … a sanction for failure to comply with a discovery order." 427 U.S. at 642. However, the Supreme Court emphasized, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be

tempted to such conduct in the absence of such a deterrent." *Id*. at 643. That is why, in *Nat'l Hockey League*, the Supreme Court reversed the Third Circuit and reinstated the district court's dismissal of plaintiff's action for failure to timely answer written interrogatories as ordered by the district court. *Id*. This Court should likewise affirm the district court's carefully reasoned decision in this case.

### A. The District Court Acted Within Its Discretion in Calculating Fees and Costs

The most important remedy awarded by the district court was its extension of the existing licensing bar, because that directly addressed the competitive harm caused by CEATS's and Individuals' breaches of the protective order. The licensing bar is the subject of the Appeal No. 21-40705. The present appeal addresses the district court's monetary sanctions, which were needed to make TicketNetwork whole after CEATS's and Individuals' protective order violations and subsequent interference with the court's investigation.

To calculate monetary sanctions, the district court carefully reviewed TicketNetwork's request for fees and costs, reducing the amount from $755,733.90 (as requested) to $505,454.13 (as awarded). ROA.12943, 12945. In so doing, the district court determined what rates were

reasonable in the community, applied the *Johnson* factors, and addressed CEATS's and Individuals' objections.  ROA.12946-52.

CEATS and Individuals complain the court found Fish & Richardson's rates reasonable (except for the reductions it allowed) despite previously awarding fees to CEATS at a lower rate.  However, as the district court explained, CEATS's rates were uncontested—and the fact lower rates were reasonable does not preclude the possibility that higher rates would *also* be reasonable.  ROA.12949.  To be sure, CEATS and Individuals cite no case establishing such a rule.

In addition, the district judge was well aware that TicketNetwork's counsel, Fish & Richardson, commands higher rates than CEATS's counsel because it is the country's preeminent technology law firm.   ROA.4833-49.  But Fish is not just a national law firm.  Fish—and other firms like it—are very much a party of the East Texas legal community, and their lawyers appear in the Eastern District of Texas every day.  This is why the Eastern District of Texas has approved rates as high as $1,100.  ROA.4820.  In addition, the Fish team includes former district Judge Leonard Davis, who has no counterpart on CEATS's legal team.  ROA.4847-49.  Judge Gilstrap knows all of this from his long experience in the district, and he was best

positioned to make fact findings about reasonable rates in his court. *See e.g.*, *Brantley v. Surles*, 804 F.2d 321, 327 (5th Cir. 1986).

CEATS and Individuals suggest that Fish was not needed for a protective order dispute, but Fish was TicketNetwork's counsel in the underlying litigation—which involved patents—and it would have been much more expensive to switch counsel. In addition, Fish's technical fact-finding skills and knowledge of the record *were* needed.

CEATS and Individuals next complain that the $505,454.13 award is nearly as much as the previous $651,944.88 awarded to CEATS for the underlying litigation. In so arguing, they neglect to mention that the award to CEATS itself exceeded the jury's $459,800 verdict in the underlying case, and the district court therefore greatly reduced its fee request. ROA.2718. They also ignore the fact it was their misconduct that caused so much work on the protective order, as the district court found: "the actions by the Involved Individuals gave rise to the very costs they now complain would lead to their financial ruin. These costs were only amplified by their concealment and obfuscation efforts." ROA.12952. And again, the district judge was in the best position to judge the reasonableness of Fish's hours, and he found them reasonable (except for deductions).

Finally, CEATS and Individuals say the district court did not apply *Johnson* step 2 (subjective evaluation) after calculating the lodestar amount. This is demonstrably incorrect. The district court expressly states it must "conside[r] whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and based on the factors set out in *Johnson*." ROA.12946. And after calculating the lodestar amount, the court addressed at length whether that amount was reasonable given the facts of the case. The key thing CEATS and Individuals miss is that *they* caused the high expenses, both by their protective order violations and perhaps even more so by their attempts to cover those up. ROA.12952. The district court further explained:

> Despite the numerous safeguards and certifications the Court employed to protect TicketNetwork's sensitive document, CEATS and the Involved Individuals recklessly disregarded those procedures and attempted to obfuscate their misdeeds once caught. This resulted in actual costs to TicketNetwork in order to investigate and enforce the promises and safeguards ordered by the Court and previously agreed to by CEATS and the Involved Individuals. It is appropriate that CEATS and the Involved Individuals shoulder the costs for their reckless disregard for the Court's orders. The Court is cognizant of the real-life implications of its fee award, and the Court finds that the fee award provided herein is appropriate in light of the conduct.

ROA.12952. Given this, CEATS is simply wrong to say (at 18) the district court "fail[ed] to exercise the discretion afforded to it."

CEATS's analysis of *Combs v. City of Huntington, Tex.*, 829 F.3d 388 (5th Cir. 2016) is also incorrect. In *Combs*, this Court found error in the district court's mechanical reduction of fees based on degree of success. *Id.* at 397-98. No such issue is present here. *Farrar v. Hobby*, 506 U.S. 103 (1992), cited by *Combs*, also does not help CEATS. There, the district court mechanically awarded full fees after the plaintiff won only nominal damages. *Id.* at 114. That again is not at issue here. *Farrar* also held "the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness," *id.* at 115, directly contradicting CEATS's argument that the district court was required to discuss each *Johnson* factor.

CEATS and Individuals have shown no clear error in the district court's fact findings related to fees and costs, and no abuse of discretion in the amount awarded.

### B.   The District Court Acted Within Its Discretion in Assigning Liability to CEATS and Individuals

TicketNetwork does not take a position as to whether it is CEATS or the Individuals who should pay the monetary sanctions. From TicketNetwork's perspective, the important thing is that it be made whole, and it views the question of who pays as an ancillary dispute among CEATS

and its officers, employees, and agents.  To date, CEATS has paid the entire amount of monetary sanctions except for $90,500 paid by Dr. Billett.

That said, TicketNetwork supports the district court's imposition of joint and several liability because it insures that TicketNetwork is paid before CEATS and Individuals resolve their ancillary dispute.  At a minimum, CEATS should be held responsible for the entire amount.

Both CEATS and Individuals argue liability should not be joint and several, but they are not situated in the same position, so TicketNetwork will respond first to CEATS.

### 1.    CEATS Was Properly Held Liable

CEATS ignores the fact that it is responsible for *all* the identified misconduct.  Mr. Skane was CEATS's CEO, and Ms. McAuliffe and Dr. Billett were its consulting experts.  While the district court found CEATS itself *violated* the protective order based on the conduct of only its CEO Mr. Skane (ROA.3215), it also found that CEATS should be *responsible* for the entire amount of monetary sanctions.  ROA.3215, 3235. This is reasonable, and CEATS cites no case holding that a party cannot be held liable for its experts' misconduct in a case.  Indeed, this Court has held the opposite.  *E.g.*, *Wilson v. Johns-Manville Sales Corp.*, 810 F.2d 1358, 1362-63 (5th Cir. 1987) (affirming sanction against party for expert

conduct); *Mac Sales Inc. v. E.I. duPont de Nemours & Co.*, 121 F.3d 703, 1997 WL 450059, at *1 (5th Cir. 1997) (same).

This conclusion is reinforced by Rule 37, which applies to CEATS but not Individuals.   As stated by the district court, Rule 37 *requires* the court to order payment of reasonable expenses, including attorneys' fees, unless "the failure was substantially justified or other circumstances make an award of expenses unjust." ROA.3235.  Here, the district court found there were no such justifications or circumstances (ROA.3235), and CEATS identifies none here.  The expenses and fees ordered by the district court were the direct result of CEATS's protective order violations and cover up, including false statements under oath and destruction of evidence, which required a lengthy forensic investigation and two evidentiary hearings.

CEATS is also wrong that the district court improperly sanctioned it for the conduct of others.  It does not challenge the district court's finding that CEATS's CEO Mr. Skane acted with actual and apparent authority and thus *was* CEATS.  ROA.3225-26.  In addition, this Court permits a *party* to be sanctioned under Rule 37 for the conduct of *its* retained experts.  *E.g.*, *Honey-Love v. United States*, 664 F. App'x 358, 361-62 (5th Cir. 2016).  Other circuits agree.  *E.g.*, *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003).  Finally, CEATS waived its suggestion (at

25) that counsel should be sanctioned instead because CEATS emphatically told the district court counsel should *not* be sanctioned.  *E.g.* ROA.4448-50.

### 2.    Individuals Were Properly Held Liable

It was also within the district court's discretion to find Individuals jointly and severally liable.  They too are guilty of serious misconduct that directly caused undue expense for TicketNetwork, and even without Rule 37, the district court had the authority to sanction them, as it explained: "CEATS is a 'party' and Mr. Skane is a 'party's officer.'  While Ms. McAuliffe and Dr. Billett do not fall within any of the categories listed in Fed. R. Civ. P. 37(b)(2), they have expressly submitted to the Court's jurisdiction, including its authority to issue sanctions, by signing on to the protective order in this case."  ROA.3216 n.1.

The cases cited by CEATS and Individuals on the topic of joint and several sanctions are inapposite.  For example, *Smith Int'l Inc. v. Texas Commerce Bank*, 844 F.2d 1193 (5th Cir. 1988), cited by both CEATS and Individuals, actually states "joint and several liability for sanctions may be appropriate in some cases."  *Id.* at 1201.  It merely required apportionment of Rule 11 sanctions on the facts before it because the different parties were very differently situated.  *Id.* at 1202 ("Smith International was involved in

the litigation for nearly one year before the other plaintiffs. Moreover, there are significant differences in the number of claims that each plaintiff asserted. For example, although most plaintiffs sued defendants on three of the four counts, by the end of the litigation Peck had dropped both of his securities claims and was asserting only one claim, a RICO claim, against only one defendant, TCB. We believe that differences of this sort must be considered in determining what amounts are appropriate under Rule 11.").

That is not like the present case, where the protective order violations of Mr. Skane, Ms. McAuliffe, and Dr. Billett—all working for CEATS—were all part of the same course of conduct. For example, Mr. Skane requested a list of TicketNetwork's affiliate websites, knowing it was likely confidential, and Ms. McAuliffe and Dr. Billett provided TN002528 to him. Mr. Skane then used and further disseminated what Ms. McAuliffe and Dr. Billett had sent him.

In addition, *Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993), cited by CEATS and Individuals, does not mention joint and several liability. Instead, it turned on the district court's failure to make detailed findings. *See id.* at 937 ("Because the 'sliding scale' rule of *Thomas* requires the district court to provide very specific factual findings on each of the factors above to support sanctions as large as those before us today, we must

vacate the trial judge's order and remand for findings on each of the factors just discussed."). Here, the district court made the required findings: (1) "What conduct is being punished or is sought to be deterred by the sanction?" (2) "What expenses or costs were caused by the violation of the rule?" and (3) "Were the costs or expenses 'reasonable,' as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?"

The first inquiry is answered by the district court's opinions here. The district provided very detailed discussions—in two opinions—of the conduct being punished and sought to be deterred. *See*, *e.g.*, ROA.3215-16, 3220-21, 3223, 3225, 3228-32, 3233-3235, 12951-52. The district court also made detailed findings on what costs and fees were caused by the misconduct, and whether they were reasonable and necessary. ROA.12946-52. This Court should find no abuse of discretion.

## C.    This Court Should Reject CEATS's and Individuals' Other Defenses

### 1.    The District Court Correctly Defined Bad Faith to Include Reckless Disregard

The district accepted TicketNetwork's authority that "'[b]ad faith' is characterized by conduct that is either intentional or in reckless disregard of a party's obligation to comply with the protective order." ROA.3216, citing 6 Moore's Federal Practice, § 26.108 (3d ed.); *see also* ROA.4715 (TicketNetwork arguing the same). It then found that the record "evinces

(at least) a pattern of reckless disregard for the Court's protective order."
ROA.3215.

Notably, neither CEATS nor Individuals contested this definition of
bad faith before the district court; instead, they argued their conduct was
not reckless. *E.g.*, ROA.4798 (arguing that it "did not act willfully,
knowingly, or recklessly"). Appellants have thus waived any challenge to
the definition of bad faith on appeal, as discussed further below. In
addition, the district court's definition, taken from Moore's Federal
Practice, is correct. Moore explains the concept in greater detail and also
cites to *Marrocco v. General Motors Corp.*, 966 F.2d 220 (7th Cir. 1992),
which explains in the context of protective order violations that bad faith "is
characterized by conduct which is either intentional or in reckless disregard
of a party's obligations to comply with a court order." *Id.* at 224. This
Court has also treated "reckless disregard" and "bad faith" as equivalent.
*See Inmon v. State of Mississippi*, 278 F. 23, 27 (5th Cir. 1922) ("Personal
spite or a r*eckless disregard* of the rights of others would amount to *bad
faith*.") (emphasis added).

In addition, the Supreme Court has described how the willful
blindness doctrine is deeply enshrined in American law, and prevents
defendants from escaping liability "by deliberately shielding themselves

from clear evidence of critical facts that are strongly suggested by the circumstances." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 765, 766 (2011) (applying willful blindness doctrine to patent case). The Supreme Court went on to hold that "defendants who behave in this manner are just as culpable as those who have actual knowledge." *Id.* Similarly, the Supreme Court has held that "'actual malice' in the context of a defamatory falsehood means "with knowledge that it was false or with *reckless disregard* of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (emphasis added).

In its new brief, CEATS still does not directly dispute (or even acknowledge) the district court's definition of "bad faith" as including "reckless disregard."

Individuals also do not demonstrate the district court's definition is wrong. For example, they rely heavily on *Maguire Oil*, but it does not mention or address "reckless" conduct or "reckless disregard." *See Maguire Oil Co. v. City of Houston*, 143 F.3d 205 (5th Cir. 1998). The same is true of the other Fifth Circuit and Supreme Court cases that Individuals cite. *E.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999); *Crowe v. Smith*, 151 F.3d 217 (5th Cir. 1998); *Chaves v. M/V Medina Star*, 47 F.3d 153 (5th Cir. 1995).

Individuals also cite out-of-circuit authority for the proposition that "bad faith" must be judged by a subjective rather than objective test. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017). However, the district court in this case did apply a subjective test, finding that appellants demonstrated reckless disregard for its order and further that their efforts to cover up their misconduct confirmed a culpable mental state. *E.g.*,ROA.3225, 3231-32.

Individuals next cite the Eleventh Circuit for the proposition that "recklessness is a less stringent standard than bad faith." *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992). However, Individuals' citation to this case is selective. The case actually holds that conduct justifying sanctions under 28 U.S.C. § 1927 must be at least "reckless," and after the short quote above the court immediately states: "Nevertheless, 'recklessness' is a high threshold, *see In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) ("*[o]ur court long has treated reckless and intentional conduct as similar*"), and in general requires deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *Id.* at 1217, 1219-20 (emphasis added). In short, this case actually supports the district court's definition.

Individuals next cite Black's Law Dictionary for the definition of "bad faith," but the full definition states: "A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, **_lack of diligence_** and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." BAD FAITH, Black's Law Dictionary (11th ed. 2019) (emphasis added), quoting Restatement (Second) of Contracts § 205 cmt. d (1979). This definition also supports the district court.

In addition, Black's defines "reckless disregard" as "[c]onscious indifference to the consequences of an act." DISREGARD, Black's Law Dictionary (11th ed. 2019). This definition supports the district court as well, and indicates that "reckless disregard" is more than mere recklessness.

Individuals also admit the Ninth Circuit defines bad faith as including recklessness "when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *See Fink v. Gomez*, 239 F.3d 989, 994(9th Cir. 2001) Here, the district court found reckless

disregard plus false testimony and destruction of evidence, which caused it to infer improper motive. *E.g.*, ROA.3225, 3231-32.

Finally, Individuals argue (at 18) that "[i]nadvertent error, even if it is labeled 'reckless' does not meet [the bad faith standard]." However, the district court's findings of reckless disregard are not mere labels, and Individuals have not shown clear error in the district court's fact findings, as detailed in Section II.A above. In short, even if appellants did not waive a challenge to the district court's definition of "bad faith," they have failed to demonstrate error.[7]

### 2. The District Court Afforded Individuals Due Process

Individuals are wrong they were not on notice and did not have an opportunity to respond. In other words, the district court did afford them due process, and properly rejected their due process argument. *See* ROA.12952-55.

---

[7] In addition, if the Court is not satisfied from the record that the district court made a finding of "bad faith," and concludes that appellants did not waive their objections to the Court's definition, it should remand, not reverse. The district court apparently believed it was making a finding of bad faith. "As a court for review of errors," we do "not . . . decide facts or make legal conclusions in the first instance," but "review the actions of a trial court for claimed errors." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991).

First, as the district court found, Individuals received notice of potential liability from TicketNetwork's motions, which sought relief from CEATS "or others." *E.g.*, ROA.4254, 4695. While Individuals say "others" is too vague, TicketNetwork made their exposure clear, since it discusses violations by Mr. Skane, Ms. McAuliffe, and Dr. Billett. *E.g.*, ROA.4255 (violation by Mr. Skane; also "TicketNetwork respectfully requests this Court hold CEATS, its attorneys, and Ms. Sonja McAuliffe in contempt"), 4257 (awareness by Mr. Skane), 4268-70 ("Sonja McAuliffe's Conduct Warrants Sanctions"), 4272 (seeking meaningful relief against "CEATS, CEATS' counsel, Mr. Skane, Ms. McAuliffe"), 4698-99 (violations by Dr. Billett discovered by the forensic investigator), 4767 ("CEATS Cannot Justify Dr. Billet's Repeated Misdeeds"). The district court also made it clear in its initial 2019 order it understood TicketNetwork had requested "that CEATS and ***any others involved in any breach of this Court's Protective Order jointly and severally*** pay all attorneys' fees and costs." ROA.2731.[8]

---

[8] *Goldin*, cited by Individuals, is also inapplicable because it involved Rule 11, which has a special requirement for notice and an opportunity to cure. 166 F.3d at 722. Inherent powers were also unavailable in *Goldin* because the district court did not find bad faith (unlike here). *Id.* at 723.

In addition, as the district court also found, the protective order gave Individuals notice of their potential personal liability.  ROA.367 ("I understand that any violation of the Stipulated Protective Order may subject me to sanctions"), 2989-90, 4268-69, 12953.[9]  Mr. Skane also attended both discovery hearings discussing the protective order and the highly confidential nature of TicketNetwork's customer list.  ROA.5015, 5140.

Second, Individuals attended and testified at the evidentiary hearings in this case and were represented by counsel (the same counsel who represents them now, Mr. Affeld).  ROA.6414, 6611:12-16, 6645, 6707, 6767.  The district court thus found that Individuals were given an adequate opportunity to defend themselves, even before its first sanctions order.  ROA.12945, 12953-55.

Third, there can be no doubt the district court's first sanctions order put Individuals on notice that they could be subject to personal sanctions.

---

[9] *Kaufman*, cited by the district court on this point (ROA.12953), is not as limited as Individuals say.  *See Kaufman v. Am. Fam. Mut. Ins. Co.*, 601 F.3d 1088, 1094–95 (10th Cir. 2010).  *Kaufman* does rely upon the language of a protective order to conclude a law firm "was provided adequate notice that its use of AFIC's confidential files to solicit clients was sanctionable under the protective order, and therefore its Due Process claim is without merit."  *Id.* at 1095.

ROA.3236.  However, this order did not actually impose any sanctions on

them yet, and gave them an opportunity to respond.  ROA.3236.[10]

Individuals then filed their brief.  *See* district court Dkt. No. 458 (under

seal).  And while the court limited Individuals' brief to seven pages, they did

not request additional pages.[11]

In short, the district court afforded Individuals due process.

### 3.    The District Court Did Not Apply Rule 37 to Individuals

As noted above, the district court expressly did not apply Rule 37 to

Individuals, contrary to appellants' argument.  *See* ROA.3216 n.1.

### 4.    The District Court Properly Rejected Individuals' Arguments About "Financial Ruin"

Individuals' assertion (at 6) that the district court "did not consider

whether less onerous sanctions would have been sufficient" is demonstrably

wrong, as is their assertion (at 38) the court "Fail[ed] to Consider the

---

[10] As the district court notes, Individuals do not claim any due process violation with respect to the licensing bar.  ROA.12954.  In addition, there can be no question the district court had authority to find Individuals violated the protective order in connection with finding CEATS liable.

[11] Individuals note this Court vacated Rule 11 sanctions imposed "on the spot" in *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281 (5th Cir. 1991), but it did so when there was *no* opportunity for briefing.  *Id.* at 1292.  That was not the case here.

Individuals' Financial Status." To the contrary, the district court specifically rejected these arguments, as quoted above. *See* ROA.12952.

*Coats* also does not compel a different result, as the district court explained (ROA.12950-51). *See Coats v. Pierre*, 890 F.2d 728 (5th Cir. 1989). As the district noted, *Coats* turned on its specific facts, this Court expressly did not "imply that the amount of a litigant's income should be determinative in the assessment of sanctions." *Id.* at 734. Moreover, the district court was correct *Coats* involved a *pro se* litigant, whereas Individuals are "seasoned consultants and sophisticated business professionals with litigation experience." ROA.12951. Individuals try to deny this fact finding, but fail to show clear error. Mr. Skane and Ms. McAuliffe worked for CEATS, a company in the business of litigation, and Dr. Billett is a professional expert. ROA.4364, 4366, 4394-403, 6472:19-21, 6473:2-5, 6708.

Finally, *Topalian* merely holds the district court must award the least severe effective sanctions and not be "vindictive." 3 F.3d at 937. Here, the district court held that at its sanctions were necessary to preserve its authority. ROA.12952.

### 5.    This Court's Decision in the Lead Appeal Will Not Necessarily Determine the Outcome Here

CEATS argues (at 41) that if this Court vacates or modifies the sanctions order in the first appeal, it should also vacate the fee award. This is not necessarily true. While the district court's extension of the licensing bar is its most important remedy and should be affirmed, there is no reason for this Court to vacate the separate fee award should it accept any of CEATS's arguments regarding the licensing bar.

### 6.    Should the Court Find Any Adjustment in Monetary Sanctions Required, It Should Remand

The facts of this case are complex; the district court has spent over two years actively investigating them; and the district court is most familiar with the local legal community. Therefore, should this Court find any error, it should remand with instructions for the district court to address it.

CEATS's suggestion that it should be responsible for 25% of the sanctions pulled from thin air. In addition, the case it cites involved this Court declining to remand when the district court violated its mandate after multiple previous remands. *See Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*, 960 F.2d 564, 566-67(5th Cir. 1992) ("[A]s this case is now before us for the fourth time, no useful purpose would be served by further delaying its final disposition, not to mention exposing the parties and this court to yet a fifth appeal!"). That is not the case here.

Individuals' cited cases are similarly distinguishable. In *Kenyon Int'l Emergency Servs., Inc. v. Malcolm*, No. 12-20306, 2013 WL 2489928, at *5 (5th Cir. 2013), sanctions were reversed because the sanctioned attorney "was never put on notice that sanctions were at issue, nor did he have a chance to contest their imposition orally or in writing." *Id.* at *5. There was nothing to recalculate on remand, and the facts relevant to liability were much simpler than this case. *Crowe* remanded, except for a few parties for whom "evidence is completely insufficient," who were dismissed. 151 F.3d at 240-41. *Maguire*, as discussed above, reversed for no evidence of bad faith but did not consider reckless indifference, and there was nothing to recalculate. 143 F.3d at 212. And *Coats* is the case discussed above about the *pro se* litigant. This Court did reduce the sanctions to a particular amount in the first instance, but the record and facts are distinguishable from this case, as discussed above. *See* 890 F.2d at 734.

Given the factual complexity of this case, TicketNetwork submits any adjustment to the district court's monetary sanctions would require remand.

## IV.  THE COURT SHOULD DECLINE TO CONSIDER NEW ARGUMENTS ON APPEAL

CEATS's and Individuals' appeal briefs include new arguments not advanced below. This Court does "not consider arguments or evidence that

was not presented to the district court." *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008). Indeed, this Court requires "a party to do more than just raise an argument; the contention must be pressed so that the district court has an opportunity to rule on it." *Id.*

Some examples of new arguments have already been discussed. For example, neither CEATS nor Individuals contested the district court's definition of bad faith (which had been offered by TicketNetwork); instead, they argued their conduct was not reckless. *E.g.*, ROA.4798 (CEATS arguing it "did not act willfully, knowingly, or recklessly"). Individuals' brief before the district court does not even mention "bad faith." *See* district court Dkt. No. 458 (under seal). The justifications for this definition are sound, as discussed above, but the Court should also find CEATS's and Individuals' arguments waived since they did not give the district court the opportunity to consider them.

In addition, CEATS never argued to the district court that there should be any distinction between itself, Mr. Skane, Ms. McAuliffe or Dr. Billett. The only distinction it made was that its counsel should not be sanctioned. *E.g.*, ROA.4448. CEATS likewise never argued "joint and several liability" to the district court. In fact, in CEATS's final sanctions

opposition, CEATS did not even oppose the payment of fees and costs. *See* ROA.4779-802.

Individuals likewise did not object to "joint and several" liability in the district court. The words "joint and several" do not even appear in their brief. *See* district court Dkt. No. 458 (under seal).

The Court should decline to hear these arguments for the first time on appeal.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the district's order imposing sanctions on CEATS and Individuals should be affirmed.

Respectfully submitted,

*/s/ David B. Conrad*

CARL E. BRUCE
Texas Bar No. 24036278
bruce@fr.com
DAVID B. CONRAD
Texas Bar No. 24049042
conrad@fr.com
MATTHEW COLVIN
Texas Bar No. 24087331
colvin@fr.com
AARON P. PIROUZNIA
Texas Bar No. 24098958
pirouznia@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070

JOHN W. THORNBURGH
California Bar No. 154627
thornburgh@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, California 92130
(214) 747-5070

*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2022, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

George L. Hampton        Counsel for Plaintiff-Appellant
Timothy A. Burnett        CEATS, Inc.
Stephanie A. Pittaluga
HALL GRIFFIN, L.L.P.
10th Floor, 1851 E. 1st Street
Santa Ana, CA 92705-4054
ghampton@hallgriffin.com
tburnett@hallgriffin.com
spittaluga@hallgriffin.com

Michael J. Sullivan
Brian J. Leske
ASHCROFT LAW FIRM, LLC
200 State Street, 7th Floor
Boston, MA 02109
msullivan@ashcroftlawfirm.com
bleske@ashcroftlawfirm.com

David W. Affeld        Counsel for Plaintiff-Appellants
AFFELD GRIVAKES LLP        Milford Skane, Brian Billett, and
2049 Century Park East        Sonja McAuliffe
Suite 2460
Los Angeles, CA 90067
dwa@agzlaw.com

*/s/David B. Conrad*
David B. Conrad

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

(1)    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1: this document contains 12,087 words;

(2)    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because: it has been prepared in a proportionally spaced typeface using Microsoft Word (Version 2016) in 14-point Georgia font.

*/s/David B. Conrad*
David B. Conrad